UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * ** * * * * * * * * | * | |
| GREYSTONE COMMUNITY | * | |
| REINVESTMENT ASSOCIATES, INC. | * | |
| | * | |
| Plaintiff | * | CIVIL ACTION |
| | * | NO. 3:00CV871 (CFD) |
| VS. | * | |
| | * | |
| FIRST UNION NATIONAL BANK | * | |
| | * | |
| Defendant | * | OCTOBER 28, 2003 |
| | * | |
| * * * * * * * * * * * * * * ** * * * * * * * * | * | |

## THE DEFENDANT, FIRST UNION NATIONAL BANK'S
## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO CONSOLIDATE

The defendant, First Union National Bank ("First Union"), submits this Memorandum in Opposition to the Plaintiff's, Greystone Community Reinvestment Associates, Inc. ("Greystone"), Motion to Consolidate dated October 8, 2003. In that Motion, Greystone requests that this Court consolidate the instant action with the matter of <u>Greystone Community Reinvestment Associates, Inc. v. Berean Capital, Inc.</u> No. 3:02cv1703 (AWT). Greystone's instant motion should be denied given its undue delay, as well as the fact that it will result in prejudice to First Union. For both of these reasons, which are set forth more fully below, First Union respectfully requests that Greystone's Motion be denied.

ORAL ARGUMENT NOT REQUESTED

## I.     STANDARD OF LAW GOVERNING CONSOLIDATION

Rule 42 of the Federal Rules of Civil Procedure controls the question of consolidation.

This provision provides, in pertinent part, the following:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  The question of consolidation lies within the Court's discretion.  In making such a determination, the Court must consider the following:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

In re Olsten Corp. Securities Litig., 3 F. Supp. 2d 286, 292 (E.D.N.Y. 1998] (citation omitted).

"The burden is on the party moving for consolidation to show the commonality of factual and legal issues in different actions." Id.  (citation and internal quotation marks omitted).

## II.     BACKGROUND[1]

Greystone brings this action against First Union asserting claims of breach of contract, breach of fiduciary duty, unjust enrichment, breach of confidentiality agreement, innocent

---

[1]     For a complete recitation of the facts, First Union respectfully incorporates those facts set forth in its Memorandum of Law in Support of Motion for Summary Judgment dated October 15, 2002.

misrepresentation, negligent misrepresentation, fraudulent misrepresentation and violations of the Connecticut Unfair Trade Practices Act, ("CUTPA"), Conn. Gen. Stat. § 42-110a, et seq. Greystone instituted this action on or about April 13, 2000, in Connecticut State Court. The action was subsequently removed to Federal Court on the basis of diversity jurisdiction. Discovery has been completed in this matter. Moreover, cross-motions for summary judgment were recently denied by this Court on September 30, 2003. A Trial Memorandum Order has been issued and it is expected that, absent settlement, this matter will go to trial in early 2004.

Over twenty-nine months after it instituted its suit against First Union, Greystone commenced a second action, again in state court, against Berean Capital, Inc. ("Berean").[2] This matter was subsequently removed to this Court on or about September 23, 2002. The status of the Berean Action, as derived from a review of the docket sheet, reveals that discovery is at its preliminary stages. Specifically, the parties in the Berean Action apparently conducted early discovery with respect to the issue of whether or not personal jurisdiction could be exercised over Berean. An Amended Complaint in the Berean matter was filed on or about April 10, 2003, and a Motion to Dismiss, contesting personal jurisdiction, remains pending at this time. It appears that Greystone has also filed a Partial Motion for Summary Judgment, on which briefing was only recently completed.

---

[2]    This matter shall be referred to as the Berean Action.

Along with these two actions, Berean had previously instituted an NASD arbitration against First Union on or about January 22, 2002.[3]  In that action, Berean asserted claims of breach of contract; misappropriation of confidential information; violations of the aiding and abetting fair dealing and just and equitable principles of fair trade and business practice's provisions of the NASD's Code of Conduct; amorphous violations of the anti-fraud, fiduciary duty, and other provisions of the Code; state law claims of breach of contract, misappropriation, breach of fiduciary duty and intentional misrepresentation; as well as purported violations of Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act and Rule 10(b)(5) thereunder.  (A true and accurate copy of the Statement of Claim is attached hereto as Exhibit A.)  Greystone was timely made aware of the NASD Arbitration by First Union's counsel.  The NASD Arbitration was heard on January 8 through January 10, 2003, in Charlotte, North Carolina.  The Arbitration Panel subsequently found in First Union's favor on each and every cause of action asserted in Berean's Statement of Claim.  (A true and accurate copy of that decision is attached hereto as Exhibit B.)

## III.    DISCUSSION

Greystone's instant motion to consolidate is premised on two separate justifications. First, Greystone contends that the consolidation of this matter with the Berean Action would allow all parties to participate in a joint settlement conference before Judge Thomas P. Smith.

---

[3]    This matter shall be referred to as the NASD Arbitration.

This contention can be disposed of in short order. As this Court is well aware, it is not necessary for these matters to be consolidated in order for a joint settlement conference to be conducted. In fact, as Greystone must recognize, a joint settlement conference has previously been conducted before Judge Garfinkel on November 25, 2002. This Court, along with Judge Thompson, can certainly order the parties to participate in a second joint settlement conference in the future should it desire the parties to pursue that option. The consolidation of these actions is not a prerequisite to any such undertaking.

Second, Greystone contends that consolidation of these actions will serve judicial economy. First Union respectfully disagrees. While First Union does not dispute the fact that both of these actions tangentially concern an effort to seek regulatory approval of and then market a securitized pool of mortgages, consisting of those originated under the Community Reinvestment Act of 1977, 12 U.S.C. § 2901 and conventional jumbo mortgages, that is not the end of any analysis. The Court must also consider the risks of prejudice and confusion, as well as the burden and costs to be borne by the parties in the event consolidation were to be granted.

The procedural posture of the instant matter and the Berean Action demonstrate that these cases are not on identical tracks. Not only does the instant action pre-date the filing of the Berean Action by over 29 months, but all discovery has now been completed. Specifically, First Union and Greystone conducted approximately nine depositions (taking place in Connecticut, New York, Massachusetts, Pennsylvania, and North Carolina),

5

reviewed and exchanged a vast amount of documents, and retained and completed expert disclosures based on the litigation framework that had been established over the past three years.  Moreover, cross-motions for summary judgment have now been denied and the Court has issued its Trial Memorandum Order.  It now appears that this matter will go to trial in early 2004.

Greystone casually argues that First Union will not incur any additional costs if consolidation is granted.  Specifically, Greystone contends that First Union and Berean have already engaged in discovery in the NASD Arbitration.  As this Court is well aware, discovery in the arbitration context is distinct from that employed in the Federal arena and it is likely First Union would be subject to additional discovery in the event consolidation were granted.[4] First Union, its employees, witnesses and expert should not be forced to incur the expense and inconvenience of a new round of discovery at this point in time.

The Berean Action, on the other hand, is still at a nascent stage.  A Motion to Dismiss challenging the Court's personal jurisdiction over Berean remains unresolved.  Furthermore, Greystone has apparently filed an early Partial Motion for Summary Judgment upon which briefing has just been completed.  The resolution of both of these motions could take a significant amount of time, going well into 2004. In the event Berean's motion is denied and, after the completion of all discovery, it is likely that Berean itself may choose to file its own

---

[4]  First Union's counsel would certainly have to attend any new depositions to adequately protect its client's interests in this matter.

6

motion for summary judgment, further delaying the progress of that action.  For the Berean Action to be on the same procedural footing as the instant matter could likely take until early 2005.  Given that this litigation concerns events dating as far back as **1996**, First Union would clearly be prejudiced by any further delay.

In considering the question of consolidation, this Court should also keep in mind that it is Greystone who initiated both the actions at issue and therefore knowingly directed the course of these matters.  Greystone could have named Berean as a defendant as early as 2000, but at that time, apparently viewed them as an ally in the prosecution of this action against First Union.  Only after Greystone and Berean's relationship changed did Greystone suddenly view them as an adversary.  Interestingly, Greystone selected Connecticut state court as the chosen forum to litigate that dispute despite the fact that this action was already pending.  For Greystone to now move for consolidation on the basis of judicial economy rings hollow in light of the present record.

Equally significant is the fact that all issues between First Union and Berean have been finally and fully decided by way of the NASD Arbitration.  First Union has thus already fully borne the expense of being involved in litigation with Berean, and should not be forced to incur that expense for a second time.  See Envirco Corp. v. Clestra Cleanroom, Inc., No. 5:98CV120(HGN), 2002 WL 31115664, at *3 (N.D.N.Y. Sept. 24, 2002) (recognizing that a request to consolidate must be balanced against "the interest of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation").    The

7

consolidation requested by Greystone leaves First Union with a Hobson's choice of either relitigating factual and legal issues already determined between itself and Berean or bearing the expense of demonstrating how the NASD's findings against Berean, Greystone's alleged agent, impact upon this federal court litigation. This is inherently unfair. Moreover, it undercuts the NASD's decision and the import of arbitration generally. Arbitration is supposed to resolve disputes more quickly and without the significant costs of litigation. It is not to be utilized as a dry run for Federal court litigation.

To force First Union to now litigate in the Federal arena with Berean as an additional party, benefits Greystone alone. It allows Greystone the opportunity to confuse a jury by putting on its "proof" as to its approximately 15 causes of action asserted against First Union and Berean in hopes that the claims will stick as to one of these parties. It also puts First Union is a position where it could be burdened by inconsistent factual or legal conclusions from those already established in the NASD Arbitration. For instance, Berean has claimed protection under the very same "Confidentiality Agreement" upon which Greystone's case so delicately hinges. Berean went so far as to contend that the CRA securitization was its own idea. The NASD found that First Union did not breach this Agreement and did not misuse any information as claimed by Berean. In a consolidated trial, a jury would be in a position where it would be asked to resolve facts between First Union and Berean that have already been established at arbitration. Such a situation is unfair to First Union under the circumstances of this case.

8

Given the additional expense, delay, and risk of inconsistent adjudications of common factual and legal issues faced by First Union, were these matters to be consolidated, Greystone's motion should be denied in its entirety.

## IV.    CONCLUSION

For all of those reasons set forth more fully above, First Union respectfully requests that Greystone's Motion to Consolidate be denied.

THE DEFENDANT
FIRST UNION NATIONAL BANK

By: _Brian C. Roche_

James T. Shearin ct 01326
Brian C. Roche ct17975
Pullman & Comley, LLC
850 Main Street, 8th Floor
Bridgeport, CT  06604
Tel. (203) 330-2000
Facsimile (203) 576-8888
E-Mail:    jts@pullcom.com
                bcr@pullcom.com

9

## CERTIFICATION

This is to certify that a copy hereof was mailed, postage prepaid, on the date hereon to each attorney of record and to all pro se parties of record as follows:

Eliot B. Gersten, Esq.
John J. Robacynski
Gersten & Clifford
214 Main Street
Hartford, CT  06106

James T. Shearin (ct01326)
Brian C. Roche    (ct17975)

BPRT/59100.1/BCR/495885v1

10

# EXHIBIT A

*Before the*

**NATIONAL ASSOCIATION OF SECURITIES DEALERS
DISPUTE RESOLUTION, INC.**
**Arbitration Department**

| | | |
|---|---|---|
| **BEREAN CAPITAL, INC.** | ) | |
| | ) | |
| **CLAIMANT,** | ) | |
| | ) | |
| v. | ) | **NASD-DR CASE NO. 02-** |
| **FIRST UNION SECURITIES, INC** | ) | |
| **(CRD #19616), merged with** | ) | |
| **First Union Capital Markets Corp.** | ) | |
| **(a/k/a  First Union Capital Markets Group)** | ) | |
| **(former CRD # 6124)** | ) | |
| | ) | |
| **WESLEY MALONE JONES, SR.** | ) | |
| **(CRD#1763181)** | ) | |
| | ) | |
| **F. TREZEVANT MOORE, JR..** | ) | |
| | ) | |
| **DOUGLAS E. LUCAS, JR.** | ) | |
| **(CRD # 2144271)** | ) | |
| **RESPONDENTS** | ) | |

---

## STATEMENT OF CLAIM

**NOW COMES CLAIMANT,** by the undersigned counsel, and alleges as follows:

**A.     THE CLAIMANT**

Berean Capital, Inc. ("Berean") is a broker-dealer registered with the Securities and Exchange Commission and is a member of the National Association of Securities Dealers. Berean's principal place of business is located in Chicago, Illinois. Berean is owned solely by Dudley Brown, Jr., who is also Berean's president.

**B.     THE RESPONDENTS**

1.     First Union Securities, Inc., at all relevant times, has been registered with the SEC as a broker-dealer and has been a member of the National Association of Securities Dealers. First Union Securities is wholly owned by First Union National Bank and its principal place of business is in Charlotte, North Carolina. In late 2001, First Union Capital Markets Corp. was merged into First Union Securities, Inc. First Union Securities, Inc. and First Union Capital Markets Corp. have been the subject of numerous disciplinary

actions by the SEC and various states, and customer complaints, arbitrations, and lawsuits alleging violations of various securities laws and NASD rules. (First Union Capital Markets Corp. was also known as First Union Capital Markets Group). According to the NASD, in late 2001 First Union Capital Markets Corp. merged with First Union Securities, Inc. In addition, First Union Capital Markets Corp. was wholly owned by First Union National Bank, and its principal place of business has been in Charlotte, North Carolina. First Union Capital Markets Corp. has been the subject of disciplinary actions, customer complaints, and arbitrations alleging violations of various securities laws and NASD rules.

3.    Wesley Malone Jones, Sr. at all relevant times, maintained a securities license with the NASD and was associated with First Union Capital Markets, First Union Securities, and First Union Bank. Wesley Jones was also Executive Vice President and Managing Director of First Union Capital Markets.

4.    F. Trezevant Moore, Jr., at all relevant times, was associated with and served as an executive officer of First Union Capital Markets Corp., First Union Securities, Inc., and First Union National Bank.

5.    Douglas E. Lucas, Jr., at all relevant times, maintained a securities license with the NASD and was associated with First Union Capital Markets Corp., First Union Securities, Inc., and First Union National Bank. Douglas Lucas also held the office of Head Securities Trader for these three companies. According to the CRD, Douglas Lucas has been associated with Bear Stearns & Co., Inc. since 1999.

## C.    THE FACTS

1.    In or about the latter half of 1996, Berean contacted First Union Capital Markets, First Union Securities, First Union National Bank, Wesley Jones, and/or Trezevant Moore to propose a business arrangement involving the securitization of a pool of Community Reinvestment Act mortgages and the sale of the CRA certificates to financial institutions (the "CRA Deal"). Berean's proposal was that Berean would act as broker for the sale of the mortgages from First Union National Bank to a trust to be established for the purpose of this CRA Deal. Berean was to also serve as placement agent for the certificates to be sold to investors. First Union National Bank agreed to provide and service the mortgages, and a third company would create the trust that would issue the certificates. (See Exhibit 1, letters dated August 21 and August 29, 1996 from Berean to Wesley M. Jones, Managing Director, First Union Capital Markets Group.). As a result of these negotiations, in late 1996 and early 1997 Berean entered into agreements with First Union Capital Markets, First Union Securities, First Union National Bank, Wesley Jones, and Trezevant Moore, to go forward with the proposed CRA deal.

2.    Subsequently, as an acknowledgment of the parties' agreement to go forward with the CRA Deal, Berean and First Union Capital Markets, entered into a Confidentiality Agreement dated September 19, 1996, (Exhibit 2), which provides, among other things, as follows:

First Union and Berean agreed to keep all knowledge and information disclosed to them in connection with the CRA Deal strictly confidential and held in trust;

First Union agreed to not disclose such knowledge and information to any person without Berean's prior written approval;

First Union agreed to not in any way whatsoever circumvent or interfere with Berean in its efforts to effectuate this [CRA Deal] or any related transaction; and

First Union agreed to not circumvent, interfere with, or attempt to inhibit or impair in any way whatsoever, Berean's role in this [CRA Deal], its relationship with its clients, or its contract rights to its fees for its services.

3.    In addition to the Confidentiality Agreement, First Union Securities, First Union Capital Markets, and the other Respondents were aware that Berean, as part of the CRA Deal, entered into a fee agreement with the third party whereby Berean would receive a fee of 12.5 basis points (.125 %) for any commitments Berean secured from institutions to purchase the CRA certificates. (See EXHIBIT 3, the June 6, 1997 letter to Berean from the third party.) Furthermore, First Union National Bank and the other Respondents agreed to pay Berean a fee of 50 basis points (.50 %) for brokering the sale of the mortgages from First Union National Bank to the trust which was to issue the Certificates.

4.    In good faith reliance on Respondents' representations and agreements, Berean, commenced to devote considerable and substantial work, effort, resources, and services to effectuate the CRA Deal. In this regard, Berean spent considerable time, effort, and money identifying and contacting numerous financial institutions, successfully securing several soft circle purchase commitments for the CRA Deal. Furthermore, Berean provided Respondents with frequent status reports regarding Berean's considerable solicitation efforts which reports included disclosing to Respondents confidential information such as the names and indications of interests of numerous financial institutions. In addition, opinion letters from the Office of the Comptroller of the Currency and the State of Massachusetts regarding the CRA Deal were also obtained.

5.    Furthermore, First Union Securities, First Union Capital Markets, and the other Respondents expressly acknowledged in various letters the considerable work and effort of Berean and the other parties in effectuating the CRA Deal. In a letter dated March 14, 1997 from Wesley Jones, copied and forwarded to Dudley Brown at Berean, Wesley Jones acknowledges that numerous actions have been taken to effectuate the CRA Deal, including retention of outside counsel and contacts with various state agencies. In addition, in a letter dated May 2, 1997, Eileen M. Taylor, Esq., at Kilpatrick Stockton, LLP, First Union's counsel retained for the CRA Deal, acknowledges that an Offering Circular for the CRA Deal had been drafted and was being circulated for comment. Furthermore, First Union acknowledged in an "Outline of Responsibilities and Costs

4

Breakdown for Services" the significant roles of Berean and other parties involved in the CRA Deal. (See letters and Breakdown attached as EXHIBIT 4). These letters and other documents clearly show that the Respondents agreed with and committed to Berean to move forward with the CRA Deal and keep all information regarding the CRA Deal strictly confidential.

6.    Thus, Respondents were fully aware of the Confidentiality Agreement, fee agreements, and other agreements entered into with Berean. Respondents were also aware that Berean devoted considerable time, effort, money, and other resources to the CRA Deal and possessed a considerable financial interest in it. Respondents were aware that they had an obligation to Berean to maintain the information regarding the CRA Deal in strict confidence and trust, and not disclose this information to anyone or use it in connection with other CRA deals with other firms. Respondents were also aware of their obligations to Berean to go forward with the CRA Deal and not undermine Berean's interests by engaging in CRA transactions with other firms. Respondents were aware of Berean's interest in the fees, profits, and other benefits that Berean reasonably expected to derive from the CRA Deal and that by violating the Confidentiality Agreement, fee agreements, and other agreements Respondents would cause Berean considerable financial and other damages.

7    Nevertheless, Respondents, without informing Berean, misappropriated the confidential knowledge and information provided to it by Berean in connection with the CRA Deal. Respondents then used this confidential information to engage in at least one secret CRA securitization deal with other broker-dealers, including Bear, Stearns & Co., Inc., without Berean's knowledge. (See EXHIBIT 5, cover pages from the Offering Circulars for the First Union/Bear Stearns CRA transaction dated January 1, 1997). In fact, Respondents apparently offered the securities in the secret First Union/Bear Stearns CRA transaction to many of the same institutions that Berean disclosed, in strict confidence and trust, to Respondents that it had approached and secured soft circle commitments from in connection with the CRA Deal. In addition, the date of the First Union/Bear Stearns Prospectus, January 1, 1997, indicates that at the same time Respondents were working with Berean on the CRA deal they were secretly using Berean's information to facilitate their secret CRA deal with Bear Stearns. Moreover, Respondents participation in another CRA transaction at the same time as it was engaged in the CRA Deal with Berean circumvented Berean's efforts to effectuated the CRA Deal. Thus, Respondents wrongfully and intentionally violated its Confidentiality Agreement and other agreements with Berean and completely undermined Berean's interests in the CRA Deal.

Respondent Trezevant Moore testified under oath in a sworn deposition given on January 29, 2001 and March 21, 2001 in the case of *Greystone Community Reinvestment Associates, Inc. v. First Union National Bank; (No. 3:00CV871(CFD)); United States District Court for the District of Connecticut.* At his deposition, Trezevant Moore admitted that the Respondents worked on both the CRA Deal and the First Union/Bear Stearns CRA transaction simultaneously; that Respondents were aware of the existence of the September 1996 Confidentiality Agreement; that Respondents acquired considerable

confidential information, including the identities of Berean's soft circle commitments, in connection with the CRA Deal; that Respondents shared information regarding the CRA deal with other team members on the First Union/Bear Stearns transaction; and that Respondents did not inform Berean of the existence of the First Union/Bear Stearns transaction. (Transcript of Trezevant Moore's deposition).

In addition, by virtue of the fact that Respondents worked on both the CRA deal and the First Union/Bear Stearns transaction simultaneously, then all information Respondents acquired in connection with the CRA Deal was in fact imputed to and used in connection with the Respondents' work on the First Union/Bear Stearns transaction.

8.    As a result of the foregoing, Berean has been damaged in an amount in excess of $1.0 million in lost commissions, fees, earnings, and profits. In addition, Berean has suffered additional damages in an amount in excess of $320,000 for expenses and costs incurred in connection with Berean's work on the CRA Deal. Furthermore, Respondents wrongful and intentional misconduct in this case warrant an award of punitive damages to punish Respondents for their misconduct.

**D.    VIOLATIONS**

Based on the foregoing, Respondents First Union Capital Markets, First Union Securities, Wesley Jones, Trezevant Moore, and Douglas Lucas willfully, intentionally, and or recklessly breached, and caused others to breach, their contracts and agreements with Berean. In addition, Respondents also misappropriated from Berean confidential information that they expressly agreed to maintain in strict confidence and trust in connection with the CRA Deal, and failed to inform Berean that they were simultaneously working on a CRA transaction with Bear Stearns. Respondents conduct in this matter constitutes violations of, and the aiding and abetting of violations of, the fair dealing and just and equitable principals of fair trade and business practices provisions of the NASD's Code of Conduct. In addition, Respondents conduct also constitute violations of the anti-fraud, fiduciary duty, and other provisions of the Code. Respondents' conduct further constitutes violations of state laws against breach of contract, misappropriation, breach of fiduciary duty, intentional misrepresentation, and other laws. Respondents' conduct also constitutes violations of the anti-fraud provisions of Section 17(a) of the Securities Act of 1933, and Section 10(b) of the Securities Exchange Act, and Rule 10b-5 thereunder.

The actions of each Respondent is attributable to all other Respondents through the doctrines of respondeat superior and agency.

**E.    DAMAGES AND RELIEF REQUESTED**

As a result of the Respondents willful, intentional, and reckless violations and misconduct, Claimant has suffered substantial monetary damages and, accordingly, Claimant respectfully requests that the Arbitration Panel issue an award in favor of Claimant ordering Respondents to:

1.     Compensate Claimant for its actual out of pocket costs and expenses associated with the CRA Deal, which exceed $320,000;

2.     Compensate Claimant for its lost profits, fees, commissions, and earnings in excess of $1.0 million with respect to the CRA Deal;

3.     Pay Claimant punitive damages in an amount deemed appropriate by the panel for Respondents' willful, intentional, and fraudulent misconduct.

4.     Pay Claimant's attorneys fees, forum fees, member surcharges, and other fees, costs, and expenses that Respondents have caused Claimant to incur in connection bringing this action.

5.     Pay Claimant interest at the rate of 8 % for all monies due and owed to Claimant by Respondents, commencing from 1997 to the present.

6.     Provide all other relief deemed appropriate by the panel.

Respectfully Submitted for Claimant
Berean Capital, Inc.

By:     _Bruce Sanders_

Bruce Sanders, Esq.

Law Office of Bruce Sanders,
A Professional Corporation
1408 Castle Cliff Place
Silver Spring, Maryland 20904
(301) 989-8677 (office)
(301) 989-1777 (fax)

Date:  January 22, 2002

*EXHIBIT* B

# Award

## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Name of the Claimants
Berean Capital, Inc.

Case Number: 02-00427

Name of the Respondents
First Union Securities, Inc.
Douglas E. Lucas, Jr.
Wesley M. Jones, Sr.
F. Trezevant Moore, Jr.

Hearing Site:    Charlotte, N.C.

## REPRESENTATION OF PARTIES

Claimant, Berean Capital, Inc., hereinafter referred to as "Claimant":  Bruce Sanders, Esq., Law Office of Bruce Sanders, Silver Spring, MD.

Respondents, First Union Securities, Inc. ("First Union"), Douglas E. Lucas, Jr. ("Lucas"), Wesley M. Jones, Sr. ("Jones"), and F. Trezevant Moore, Jr. ("Moore"), hereinafter collectively referred to as "Respondents":  Brian C. Roche, Esq., Pullman & Comley, LLC, Bridgeport, CT.

## CASE INFORMATION

Statement of Claim filed on:  January 22, 2002
A representative of Claimant signed the Uniform Submission Agreement on:  January 8, 2002
Statement of Answer filed by Respondents on:  April 3, 2002
A representative of Respondent First Union signed the Uniform Submission Agreement:  February 24, 2002
Douglas E. Lucas, Jr. submitted a signed, but undated, Uniform Submission Agreement
Wesley M. Jones signed the Uniform Submission Agreement on:  April 1, 2002
S. Trezevant Moore, Jr. signed the Uniform Submission Agreement on:  March 29, 2002

Respondents filed a Motion to Dismiss on April 3, 2002.
Claimant filed an Opposition to Respondents' Motion to Dismiss on May 8, 2002.
Respondents filed a Reply Brief in Further Support of the Motion to Dismiss on May 17, 2002.
Claimants filed a Response to Respondents' Reply Brief to Support the Motion to Dismiss on May 22, 2002.
Claimants filed a Brief in Support of its Opposition to Respondents' Motion to Dismiss as to Respondent Jones on June 4, 2002.
Claimant filed a Request to the Director of Arbitration and Claimant's Motion to the Arbitration Panel to Remove the Case from Charlotte, NC to Chicago, IL on May 22, 2002.
Respondents filed an Opposition to Claimant's Request to the Director of Arbitration and Claimant's Motion to the Arbitration Panel to Remove the Case from Charlotte, NC to Chicago, IL on May 28, 2002.
Claimant filed a Response to Respondents' Opposition to Claimant's Request to the Director of Arbitration and Claimant's Motion to the Arbitration Panel to Remove the Case from Charlotte, NC to Chicago, IL on June 4, 2002.
Respondents filed a Sur-reply Memorandum in Further Opposition to Claimant's Request to the Director of

Arbitration and Claimant's Motion to the Arbitration Panel to Remove the Case from Charlotte, NC to Chicago, IL on June 4, 2002.

Claimants filed a Motion for Summary Award on October 18, 2002.
Respondents filed a Memorandum of Law in Opposition to Claimant's Motion for Summary Award on October 24, 2002.
Claimant filed a Response to Respondents' Memorandum of Law in Opposition to Claimant's Motion for Summary Award on October 30, 2002.
Respondents filed a Sur-reply Memorandum in Further Opposition to Claimant's Motion for Summary Award on October 31, 2002.

## CASE SUMMARY

Claimant asserted the following causes of action: willful, intentional, and/or reckless breach of contract; misappropriation of confidential information; violations of the fair dealing and just and equitable principals of fair trade and business practices provisions of the NASD Code of Conduct; violations of the anti-fraud and fiduciary duty provisions of the NASD Code of Conduct; violations of state laws against breach of contract, misappropriation, breach of fiduciary duty, and, intentional misrepresentation; and, violations of the anti-fraud provisions of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act, and Rule 10b-5 thereunder. The claim involves an alleged business arrangement involving the securitization of a pool of Community Reinvestment Act ("CRA") mortgages and the sale of the CRA certificates to financial institutions.

Unless specifically admitted in their Answer, Respondents denied the allegations made in the Statement of Claim and asserted the following defenses: failure to state a claim upon which relief may be granted; the claim is barred by the statute of limitations; the agreement is invalid as a matter of law; Claimant's claim is barred by the doctrine of laches and unclean hands; Claimant failed to allege fraud with sufficient particularity; Respondents are improper parties to this arbitration; and, the NASD is without proper jurisdiction over the Respondents.

## RELIEF REQUESTED

Claimant requested:

| | |
|---|---|
| Compensatory Damages | $   320,000 |
| Lost profits, fees, commissions and earnings | $ 1,000,000 |
| Punitive Damages | amount unspecified |
| Interest | 8% from 1997 through the present |
| Attorneys' Fees | amount unspecified |
| Other Costs | amount unspecified |

Respondents requested that attorneys fees be awarded to them for the cost of defending this arbitration. Additionally, at the hearing, Respondents requested that the Central Registration Depository ("CRD") record of Respondent Lucas be expunged.

## OTHER ISSUES CONSIDERED AND DECIDED

Prior to the hearing, the Panel denied Claimant's Motion for Summary Award.
Prior to the hearing, the Panel denied Respondents' Motions to Dismiss.
Prior to the hearing, the Panel denied Claimant's Motion to Remove the Case from Charlotte, NC to Chicago, IL.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. That Claimant's claims are denied in their entirety;

2. That Claimant's claim for punitive damages is denied in its entirety;

3. That the parties shall bear their respective costs, including attorneys fees, except as to Fees specifically addressed below;

4. The Panel recommends the expungement of all reference to the above captioned arbitration from Respondent Douglas E. Lucas, Jr.'s registration records maintained by the NASD Central Registration Depository ("CRD"), with the understanding that pursuant to NASD Notices to Members 99-09 and 99-54, Respondent Lucas must obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive; and,

5. That any and all claims for relief not specifically addressed herein are denied in their entirety.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
<table>
<tr><td>Initial claim filing fee</td><td>= $ 2,000</td></tr>
</table>

<u>**Member Fees**</u>
Member fees are assessed to each member firm that is a party in these proceedings or to the member firms that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, Claimant and Respondent First Union are parties.

<table>
<tr><td colspan="2"><u>Member Fees for Claimant</u></td></tr>
<tr><td>Member surcharge</td><td>= $ 2,800</td></tr>
<tr><td>Pre-hearing process fee</td><td>= $   750</td></tr>
<tr><td>Hearing process fee</td><td>= $ 5,000</td></tr>
<tr><td colspan="2"><u>Member Fees for Respondent First Union</u></td></tr>
<tr><td>Member surcharge</td><td>= $ 2,800</td></tr>
<tr><td>Pre-hearing process fee</td><td>= $   750</td></tr>
<tr><td>Hearing process fee</td><td>= $ 5,000</td></tr>
</table>

<u>**Forum Fees and Assessments**</u>
The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

<table>
<tr><td>One (1) Pre-hearing session with Panel @ $ 1,200</td><td></td><td>= $ 1,200</td></tr>
<tr><td>Pre-hearing conference:    September 4, 2002</td><td>1 session</td><td></td></tr>
<tr><td>Six (6) Hearing sessions @ $ 1,200</td><td></td><td>= $ 7,200</td></tr>
<tr><td>Hearing Dates:    January 8, 2003</td><td>2 sessions</td><td></td></tr>
<tr><td>January 9, 2003</td><td>2 sessions</td><td></td></tr>
<tr><td>January 10, 2003</td><td>2 sessions</td><td></td></tr>
<tr><td>Total Forum Fees</td><td></td><td>= $ 8,400</td></tr>
</table>

1. The Panel has assessed $ 4,200 of the forum fees to Claimant.
2. The Panel has assessed $ 4,200 of the forum fees to Respondent First Union.

**Fee Summary**

1. Claimant is assessed and shall pay:
   Initial Filing Fee                              = $  2,000
   Member Fees                                     = $  8,550
   Forum Fees                                      = $  4,200
   Total Fees                                      = $ 14,750
   Less payments                                   = $ 11,250
   Balance Due NASD Dispute Resolution             = $  3,500

2. Respondent First Union is assessed and shall pay:
   Member Fees                                     = $  8,550
   Forum Fees                                      = $  4,200
   Total Fees                                      = $ 12,750
   Less payments                                   = $  8,050
   Balance Due NASD Dispute Resolution             = $  4,700

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

**ARBITRATION PANEL**

Virginia S. Carson, Esq.          -      Public Arbitrator, Presiding Chairperson
Leonard Landsman                  -      Public Arbitrator, Panelist
Sidney L. Sussman                 -      Non-Public Arbitrator, Panelist

...... Dispute Resolution:
......tion No. 02-00427
Awa... Page 6

## Concurring Arbitrators' Signatures

*Virginia S. Carson*

Virginia S. Carson, Esq.
Public Arbitrator, Presiding Chairperson

2/13/03

Signature Date

_____

Leonard Landsman
Public Arbitrator, Panelist

_____

Signature Date

_____

Sidney L. Sussman
Non-Public Arbitrator, Panelist

_____

Signature Date

*Felnuam 20, 2002*
_____

Date of Service  (For NASD Dispute Resolution office use only)

NASD Dispute Resolution
Arbitration No. 02-00427
Award   Page 6

**Concurring Arbitrators' Signatures**

_____                    _____
Virginia S. Carson, Esq.                    Signature Date
Public Arbitrator, Presiding Chairperson


_____                    _____
Leonard Landsman                            Signature Date
Public Arbitrator, Panelist

                                            _____
_____                     √/1√/03
Sidney L. Sussman                           Signature Date
Non-Public Arbitrator, Panelist


_____
February 20, 2002
Date of Service (For NASD Dispute Resolution office use only)

NASD Dispute Resolution
Arbitration No. 02-00427
Award    Page 6

Concurring Arbitrators' Signatures

_____
Virginia S. Carson, Esq.
Public Arbitrator, Presiding Chairperson

_____
Signature Date

_____
Leonard Landsman
Public Arbitrator, Panelist

___2/14/03___
Signature Date

_____
Sidney L. Sussman
Non-Public Arbitrator, Panelist

_____
Signature Date

___February 20, 2003___
Date of Service (For NASD Dispute Resolution office use only)